**In re Herman JACOBOWITZ, Debtor.**

**The Cadle Company, Plaintiff,**

**v.**

**Herman Jacobowitz, Defendant.**

**Bankruptcy No. 02–36440 (CGM).**
**Adversary No. 02–7009.**

United States Bankruptcy Court,
S.D. New York,
Poughkeepsie Division.

Aug. 11, 2003.

---

Lillian S. Weigert, Gellert & Cutler, P.C., Poughkeepsie, NY, for Plaintiff.

Joseph J. Haspel, Goshen, NY, for Defendant.

## MEMORANDUM AND DECISION ON MOTION FOR SUMMARY JUDGMENT PURSUANT TO 11 U.S.C. § 727(a)(3)

CECELIA G. MORRIS, Bankruptcy Judge.

### I. INTRODUCTION

On June 18, 2002, Herman Jacobowitz ("Jacobowitz") filed a voluntary petition under Chapter 7 of Title 11 of the United States Bankruptcy Code. On October 30, 2002, the Cadle Company ("Cadle"), based in Newton Falls, Ohio, commenced an adversary proceeding against Jacobowitz seeking judgment that he should be denied a discharge pursuant to 11 U.S.C. §§ 727(a)(3), (a)(5) and (a)(7).

On December 2, 2002, Jacobowitz filed an answer to Cadle's complaint. Jacobowitz acknowledged Cadle's factual assertions that he lacked bank statements and other records, but argued that he lives a life that does not leave a paper trail. Further, Jacobowitz answered that his income tax returns and previous deposition testimony presented sufficient information from which Cadle might ascertain his financial condition or business transactions.

On February 12, 2003, Cadle filed a motion for summary judgment pursuant to Bankruptcy Rule 7056 together with a memorandum of law in support of the motion. The summary judgment motion listed Jacobowitz's Schedule J expenses for which he provided Cadle no documented proof. On April 6, 2003, Jacobowitz filed an affidavit and memorandum of law in

opposition to Cadle's motion for summary judgment. Cadle filed a reply memorandum of law on May 8, 2003.

The summary judgment motion was heard on May 14, 2003. Jacobowitz claimed there were still disputed questions of fact and that the matter was not ripe for summary judgment. In the interest of justice, a second hearing was scheduled for June 27, 2003 to satisfy the Court as to possible lingering facts on the summary judgment motion. At this second hearing, Cadle indicated it was proceeding only on its § 727(a)(3) cause of action and withdrew the other portions of its complaint.

## II. JURISDICTION

The Court has core jurisdiction over this adversary proceeding under 28 U.S.C. §§ 1334(a) and 157(a) and (b) and the "Standing Order of Referral of Cases to Bankruptcy Judges" of the United States District Court for the Southern District of New York, dated July 10, 1984 (Ward, Acting C.J.).

## III. FACTS

For purposes of the summary judgment motion, in determining whether there are material facts in genuine dispute, this Court looks first at the parties' Statements of Material Facts, filed pursuant to S.D.N.Y. LBR 7056–1. Additionally, the Court looks to testimony received from Jacobowitz, Yitzchok Tyrnauer of Congregation B'nai Yoel in Monroe, New York, and Lipa Deutsch of Congregation Shaare Ezra in Monroe, New York. Taken together, the Statements and testimony have produced a body of uncontested facts.

Jacobowitz lives with his wife and seven of nine children in Monroe, New York. He is a licensed insurance broker in the State of New York. At the time he filed for bankruptcy on June 18, 2002, Jacobowitz was a commissioned insurance salesman for I. Levine Insurance and had approximately three or four customers. Prior to his work for I. Levine Insurance, Jacobowitz served as an insurance salesman for MetLife for approximately four years until 2001, as a stockholder and officer of Prime Products, purchased through a leverage buyout, as a parts salesman for Zenith Ignition in Totowa, New Jersey, and as a first-aid supply salesman for Ever Ready First Aid. He subscribes to and reads *Forbes* magazine and insurance magazines. Jacobowitz is currently unemployed and his wife does not work outside the home.

Jacobowitz's petition lists assets totaling $1,470.00 and debts totaling $3,020,000.00, of which more than $2.9 million is owed to Cadle. The obligation to Cadle arose from an unpaid balance on a promissory note it holds that Jacobowitz personally guaranteed for Prime Products, Jacobowitz's prior failed business venture.[1] Jacobowitz's default on the note was litigated in 1994 in Superior Court of New Jersey, Passaic County, and Cadle won a judgment against Jacobowitz for $1,962,334.11. The judgment was recorded in Orange County, New York in 1995.

Jacobowitz provided Cadle his personal federal and state income tax returns for the years 1999, 2000 and 2001, prepared by Jacobowitz's accountant. Those returns show income of $25,485 in 1999, $32,760 in 2000, and $10,419 in 2001. Jacobowitz said he would receive an IRS Form 1099 statement of taxable income from I. Levine Insurance, but he failed to produce any copies from his records, from his accountant, or from I. Levine Insurance. During

1. Jacobowitz resigned his position as a shareholder at Prime Products in 1991 because of disagreements with another shareholder, who was making the company's business decisions. Thereafter, Jacobowitz had nothing to do with Prime Products.

the first half of 2002, Jacobowitz earned an average of $8,000.00 per month; Jacobowitz listed this income on Schedule I.

On Schedule J of his petition and the Schedule J attachment, Jacobowitz listed the following relevant expenses:

a) Rent: $ 600.00
b) Telephone: $ 400.00
c) Food: $1,300.00
d) Clothing: $ 200.00
e) Transportation: $ 150.00
f) Business travel and entertainment: $1,500.00
g) Office expense: $ 400.00

Jacobowitz testified that the amounts he listed on his Schedule J were estimates and guesses. He has no records to verify these listed expenses because he pays all his bills in cash or by money order. Jacobowitz does not own a house.[2] He rents his apartment from his cousin, who lives above him and pays his utilities; they have no written rental contract and Jacobowitz does not take receipts as proof of his cash payments. He pays telephone charges in cash at the telephone company's local office and he promptly discards the bills once paid. Jacobowitz does not keep receipts for cash grocery and clothing purchases, and Lipa Deutsch testified that Congregation Shaare Ezra supplements Jacobowitz's food and clothing needs with charity. Jacobowitz does not keep receipts for cash automobile maintenance payments, tolls and gasoline purchases,[3] nor mileage records, despite repeated admonitions by his accountant to save such documents to calculate his income tax returns. Jacobowitz testified about his accountant: "He's always yelling at me why

I don't keep records." When Jacobowitz would take business clients to lunch or dinner, he would pay in cash and leave the receipt on the dining table. He similarly kept no receipts for his home office and advertising expenses paid in cash.

Jacobowitz explained that he makes all his purchases in cash because he does not have a credit card. However, Jacobowitz acknowledged that his wife has "a few" credit cards, that he pays her credit card bills, and that he is occasionally permitted to use her credit cards.

Jacobowitz admitted he further relies on cash because he does not have a bank account. He would cash his paychecks from I. Levine Insurance through a "g'mach," a free loan service provided by his synagogue that is commonplace in the Hasidic Jewish community.[4] Yitzchok Tyrnauer, who operates the g'mach service at Congregation B'nai Yoel, of which Jacobowitz is a member, testified that the synagogue charges congregants neither fees nor interest for this service. Jacobowitz, in turn, helps his community by serving as an authorized signatory for the checking account of Congregation Shvlia David in Monroe, New York, and by fund-raising in foreign countries for the religious school that his children attend, including a fund-raising trip to Honduras in May 2002.

## IV. DISCUSSION

Cadle asserts that it is entitled to summary judgment on its objection to discharge, claiming Jacobowitz has not pro-

---

**2.** Jacobowitz previously held title to property at 4 Zenta Road, Monroe, New York. The house on that property was bought for another person, but Jacobowitz said he put the deed on his name because the buyer did not have a "green card" at the time.

**3.** Jacobowitz does not own a car, but he is permitted to use his synagogue's car for business travel.

**4.** Judaism's teachings regarding lending money are all based upon the biblical passage in Exodus, chapter 22, verse 24: "When you lend money to any of My people, to the poor among you, you shall not be to him as a creditor, nor shall you impose upon him any interest."

duced bank statements, canceled checks, deposit slips or other ledgers or books that would allow it to comprehend what came into and left the debtor's hands in the years immediately preceding his bankruptcy proceeding and that his failure to keep certain business records violates 11 U.S.C. § 727(a)(3).

### Summary Judgment Standard

Summary judgment should be granted under Fed.R.Civ.P. 56, made applicable to this proceeding by Bankruptcy Rule 7056, when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The non-moving party may oppose a summary judgment motion by making a showing that there is a genuine issue as to a material fact in support of a verdict for that party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986).

### Section 727(a)(3)

Under 11 U.S.C. § 727 of the Code, an individual debtor is entitled to a discharge unless one of the ten enumerated exceptions to discharge specified in § 727(a) is established. The discharge extends to all pre-petition debts, except to the extent to which a particular debt is held non-dischargeable under § 523 of the Code. 11 U.S.C. § 727(b). *See Karras v. Hansen (In re Karras),* 165 B.R. 636, 638 (N.D.Ill. 1994).

■ Objections to discharge are strictly construed against the objecting party and liberally in favor of the debtor to promote the bankruptcy goal of providing a "fresh start" for the honest debtor. *See Bank of Pennsylvania v. Adlman (In re Adlman),* 541 F.2d 999, 1003 (2d Cir.1976); *Continental Illinois Nat'l Bank and Trust Co. of Chicago v. Bernard (In re Bernard),* 99 B.R. 563, 569 (Bankr.S.D.N.Y.1989).

■ The movant objecting to discharge has the burden of proof by a preponderance of the evidence. *In re Gannon,* 173 B.R. 313 (Bankr.S.D.N.Y.1994).

■ Section 727(a)(3) of the Code focuses on a debtor's duty to maintain recorded information which bears on his financial condition and business affairs. Section 727(a)(3) states that a debtor's discharge will be denied if:

> the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case.

11 U.S.C. § 727(a)(3). The section's purpose is to provide creditors and the court "complete and accurate information concerning the status of the debtor's affairs and to test the completeness of the disclosure requisite to a discharge." *In re Gannon,* 173 B.R. at 321. It also ensures that "creditors are supplied with dependable information on which they can rely in tracing a debtor's financial history." *Id.* The debtor has an affirmative duty to provide such documents, and the trustee and creditors "are not required to ferret out" the required records. *In re Craig,* 252 B.R. 822 (Bankr.S.D.Fla.2000). As the Third Circuit held in *Meridian Bank:*

> The Bankruptcy Code does not specifically require a debtor seeking a discharge to maintain a bank account, nor does it require an impeccable system of bookkeeping. Nevertheless, the records must "sufficiently identify the transactions [so] that intelligent inquiry can be made of them." The test is whether there [is] available written evidence

made and preserved from which the present financial condition of the bankrupt and his business transactions for a reasonable period in the past may be ascertained. Thus, in order to invoke the protection of the bankruptcy court, the debtor must maintain and preserve adequate records. If the debtor fails to do so, there must be some justification. *Meridian Bank v. Alten,* 958 F.2d 1226, 1230 (3d Cir.1992).

The issue to be resolved when an objection to discharge founded on § 727(a)(3) is raised is whether a debtor's records are adequate to explain his finances and, if not, whether this failure is justified. *In re Reitz,* 69 B.R. 192, 197 (N.D.Ill.1986). "Once the moving party shows that the debtor has … failed to produce records and that a demand for an explanation was made, the burden shifts to the debtor to justify the destruction or failure to produce records." *In re Hyder,* 38 B.R. 467, 471 (Bankr.D.Mass.1984).

### Absence of Records Warrants Denial of Discharge

■ Courts have held that a debtor's absence of records is justification for denial of discharge. For example, the Ninth Circuit upheld the denial of discharge for a debtor who "dealt almost exclusively in cash during all his business transactions, keeping little or no verifiable records. He was unable to show where his salary was spent." *Matter of Horton,* 621 F.2d 968, 971 (9th Cir.1980); (*see also Meridian Bank,* wherein a discharge was denied to debtors who dealt only in cash and money orders). In another case, denial of a Chapter 7 debtor's discharge based on failure to keep adequate business records was warranted where the debtor did not have a bank account within three years before bankruptcy, many of debtor's business transactions were done in cash, the debtor received unspecified amount of cash in-

come from betting on baseball games and the debtor received unspecified amount of income in loans from his roommate. *In re Schroff,* 156 B.R. 250 (Bankr.W.D.Mo. 1993). Similarly, other Chapter 7 debtors were denied discharge based on their failure to keep or produce adequate financial records where they failed to supply the trustee with complete records regarding their financial condition, and where it was only through diligent efforts of trustee and creditor, who were required to subpoena and request records from third parties, that trustee was able to obtain any substantial information about debtors' financial condition. *In re Lordy,* 214 B.R. 650 (Bankr.S.D.Fla.1997). In each of the aforementioned cases, the Chapter 7 debtor was denied discharge where the records he kept were insufficient to completely and accurately inform creditors of the debtor's affairs and financial history and proved inadequate to test completeness of debtor's disclosures.

Here, Cadle sought documentation on Jacobowitz's Schedule J expenses relating to rent, telephone, food, clothing, transportation, business travel and entertainment, and office expenses. Jacobowitz said he took the numbers from his head and could provide no receipts, bills, invoices, or other records from which Cadle could ascertain his financial condition. Jacobowitz explains that he cannot present Cadle documents because they do not exist, and thus, it cannot be said that the failure to preserve books and records is his fault. Jacobowitz also fails to account for his payments towards his wife's credit cards.

The privilege of discharge depends upon the debtor's disclosure of a true and accurate picture of his financial affairs. *In re Underhill,* 82 F.2d 258, 260 (2d Cir.1936), *cert. denied,* 299 U.S. 546, 57 S.Ct. 9, 81 L.Ed. 402 (1936). Jacobowitz believes he met his disclosure obligations by providing

Cadle his federal and state income tax returns, relying on a Fifth Circuit opinion deeming tax returns "the 'quintessential documents' in a personal bankruptcy." *In re Dennis*, 330 F.3d 696, 703 (5th Cir. 2003). However, Jacobowitz's belief is misplaced. First, by not providing other basic verifiable documents, Jacobowitz improperly seeks to place the onus on Cadle to reconstruct his financial affairs. *See In re Craig*, 252 B.R. 822. Second, Jacobowitz's tax returns lacked all bases in fact when he testified that information on his tax returns—including business-related expenses from which Jacobowitz extrapolated his Schedule J expenses—were similarly estimates and guesses. The Court shares the frustration of Jacobowitz's accountant, who "yelled" at Jacobowitz to keep his receipts in order to calculate his income tax returns. Jacobowitz did not provide a true and accurate picture of his financial affairs.

At this point, the burden shifts to the debtor to justify the lack of adequate records. The Bankruptcy Code does not specify what constitutes justification for maintaining inadequate records pursuant to § 727(a)(3); instead it requires the trier of fact to make a determination based on all the circumstances of the case. The issue of justification depends largely on what a normal, reasonable person would do under similar circumstances. The inquiry should include the education, experience and sophistication of the debtor; the volume of the debtor's business; the complexity of the debtor's business; the amount of credit extended to debtor in his business; and any other circumstances that should be considered in the interest of justice. *Meridian Bank*, 958 F.2d at 1231.

For example, a debtor's circumstances as a casual laborer did not require that he maintain records suggested by creditor, and thus creditor failed to prove allega-tions that debtor knowingly and fraudulently withheld recorded information relating to his property or financial affairs. *In re Haugen*, 9 B.R. 4 (Bankr.S.D.Fla.1980). Further, "obviously an unsophisticated wage earner dealing primarily in cash should not be denied a discharge because he failed to keep books of account. A higher standard of care is required, however, for a merchant actively engaged in credit transactions." *Goff v. Russell Co.*, 495 F.2d 199, 201–02 (5th Cir.1974).

Jacobowitz is neither a casual laborer nor an unsophisticated wage earner. His testimony demonstrates that he is an experienced salesman who had been in business for many years preceding this bankruptcy. He is a licensed insurance broker who regularly dealt in contracts and paper documents, is a signatory on a congregation's checking account, and knows the value of maintaining adequate records. He entertained clients and reads *Forbes* magazine. Jacobowitz served as shareholder and officer of Prime Products, purchased through a leverage buyout and for whose debts Cadle is now prosecuting him. And he has traveled extensively throughout the world for fund-raising. Sophisticated business persons are generally held to a high level of accountability in record keeping. *See In re Gordon*, 83 B.R. 78, 80 (Bankr. S.D.Fla.1988) (even though debtor did not operate business of her own, she displayed a level of sophistication that made her failure to keep records unjustified). Jacobowitz is denied a bankruptcy discharge for his failure to maintain adequate books and records.

In any event, even if Jacobowitz was unsophisticated and his business not complex, he was not justified in failing to maintain the bare minimum books and records from which his financial condition or business transactions might be ascer-

tained, and would similarly be denied a bankruptcy discharge.

## V. CONCLUSION

For the foregoing reasons, Cadle's motion for summary judgment is granted. This Court shall issue a separate Order in conformity with this Memorandum and Decision.