**In re Herman JACOBOWITZ, Debtor.**

**Herman Jacobowitz, Appellant,**

v.

**The Cadle Company, Appellee.**

**Bankruptcy No. 02 B 36440(CGM). 03 Civ. 8836(WCC).**

United States District Court, S.D. New York.

May 7, 2004.

---

Law Office of Joseph J. Haspel, Joseph J. Haspel, of counsel, Goshen, NY, for appellant.

Gellert & Quartararo, P.C., Lillian S. Weigert, of Counsel, Poughkeepsie, NY, for appellee.

## OPINION AND ORDER

CONNER, Senior District Judge.

Appellant Herman Jacobowitz (the "debtor") appeals to this Court from an Order and a Memorandum and Decision, *Cadle Co. v. Jacobowitz (In re Jacobowitz)*, 296 B.R. 666 (Bankr.S.D.N.Y.2003), both of which were issued April 11, 2003 (collectively the "Order"), by the Bankruptcy Court (Honorable Cecelia G. Morris, U.S.B.J.) granting the motion of appellee the Cadle Company ("Cadle") for summary judgment and denying the debtor discharge pursuant to 11 U.S.C. § 727(a)(3).[1] For the reasons stated herein, we affirm the Order of the Bankruptcy Court.

## BACKGROUND

Unless otherwise noted, the following facts are undisputed. On May 24, 1990, the debtor, a shareholder and officer of Prime Products, Inc. ("Prime Products" or "the company"), a company the debtor had purchased through a leveraged buyout, personally guaranteed a $1.5 million loan to the company made by First New York Bank (the "Bank"). (Jacobowitz Affm. ¶ 3.) Subsequently, the debtor personally guaranteed more loans to the company. (*Id.*) Sometime in 1991, the debtor left Prime Products after a dispute with his business partner that appears to have centered around a transfer of assets from Prime Products to an entity named Chester Automotive. (*Id.* ¶ 4; Jacobowitz Dep. at 144–45.) According to the debtor, when the Bank discovered that Prime Products had disposed of its assets, it assigned guards to monitor Prime Product's warehouse. (Jacobowitz Dep. at 145.) The debtor left the company the day the guards were assigned. (*Id.* at 146.) On

December 2, 1994, Cadle, a successor in interest to the Bank, obtained a $1.9 million judgment against the debtor. (Jacobowitz Affm. ¶ 5.) The debtor has not retained any records relating to Prime Products or his tenure with the company. (Jacobowitz Dep. at 116, 136.)

The debtor claims to have lived "hand to mouth" since he left Prime Products. (Jacobowitz Affm. ¶ 7.) Sometime after leaving the company, the debtor obtained a license to sell insurance in New York State and embarked on a career as an insurance salesman in order to support his wife and seven of his children.[2] The debtor was employed for four years by MetLife, but appears to have operated a business independent of MetLife during his tenure with the company because he reported business income while he was employed there. After the debtor left that company in 2001, he continued to operate his own business, working as an independent contractor for I. Levine Insurance Co. ("I. Levine"). On his 1999, 2000 and 2001 tax returns the debtor reported gross income of $25,485, $32,760 and $10,419 respectively. On each return, the debtor declared a profit from business and took business deductions that reduced the debtor's gross business income by approximately 40–50%. (R. Appeal at 277, 287.) Although he claims never to have owned a vehicle during the relevant period (Rule 7056–1 Stmt. ¶ 29), each year the debtor took a substantial business deduction, typically equal to 20–25% of gross receipts, for car and truck expenses. (R. Appeal at 277, 287, 293.) The debtor explained that during the relevant period, he used vehicles made available to him by his synagogue or friends (Jacobowitz Dep. at 38) and that he paid the synagogue for this

---

1. We have jurisdiction pursuant to 11 U.S.C. 158(a)(1).

2. The debtor declared six dependent children on his tax returns but has testified that he actually supports seven of his children.

privilege and financed some of the synagogue's costs of maintaining the vehicles. (*Id.*; Hr'g Tr.[3] at 66.) The debtor has not provided any documents reflecting this arrangement and states that when he paid maintenance costs he always discarded the receipts provided to him. (Hr'g Tr. at 67.) The debtor also took deductions for office[4] expenses and business travel and entertainment, but has not provided Cadle or the Bankruptcy Court with any record of these expenses. The debtor explains that his accountant approximated the business expenses he reported on his tax returns from figures that the debtor provided from memory. For example, each year the debtor would describe the driving he did for business purposes and his accountant would estimate deductions based upon Internal Revenue Service ("IRS") mileage allotments and charges for tolls and gas. (Jacobowitz Dep. at 47.) No gas or toll receipts were available because the debtor discarded them when they were provided. Other figures, such as business travel and entertainment expenses, were similarly taken from his memory. (*Id.* at 48–49.) The debtor's accountant repeatedly chastised the debtor for his failure to keep records of his business expenses. (Hr'g Tr. at 69.)

On June 18, 2002, the debtor filed a Chapter 7 petition (the "bankruptcy petition") wherein he reported income of $8,000 a month. When asked to supply documentation of his income for the six months preceding his bankruptcy petition, the debtor stated that he would supply Cadle with a 1099 Form or other record of his business income from I. Levine. (Jacobowitz Dep. at 54–55.) He has failed to do so despite being given several opportunities, the most recent of which occurred on June 27, 2003, a date when income information concerning 2002 should have been readily available. (Hr'g Tr. at 58–59, 89–90.) The petition also reflected monthly business expenses of $3,000 and monthly personal expenses of approximately $2,650 during the same period. The debtor admitted that he had no record of the business expenses he declared on his bankruptcy petition. (Hr'g Tr. 89–92.)

The debtor provided Cadle with copies of his 1999, 2000 and 2001 tax returns, but he did not submit any record of the business expenses he reported on the returns.[5] The debtor contends that he cannot provide a record of his expenses because he paid for everything in cash and never kept receipts and he has no checking account or credit cards. When I. Levine or another party remitted a check to the debtor, the debtor cashed the check through a free loan service offered by his synagogue called a *g'mach.* No record of any of these check transactions is available from the *g'mach.* (*Id.* at 100.)

The debtor claims that he has never owned any real property. Although title to a home in Monroe, New York, was in his name at one time, the debtor explains that he allowed an Israeli rabbi to put it in his name to allow the rabbi to circumvent federal immigration laws. (*Id.* at 85.) Title was transferred to a third party after the debtor advised them that Prime Product's creditors would, in all likelihood, soon be levying upon any property that appeared to be the debtor's. (*Id.* at 85–86.) The debtor rents his home in Monroe from his cousin who does not provide a receipt when the debtor pays the rent. (*Id.* 27–

---

**3.** All references to the "Hr'g Tr." are to the transcript of the evidentiary hearing held in the Bankruptcy Court on June 27, 2003.

**4.** The debtor's office is located in his home.

**5.** The record does not reflect whether the debtor submitted any documents verifying the income figures he reported on his tax returns.

28.) There is no written lease. The only utility that the debtor pays on a regular basis is the telephone bill that he states ranges from $300–$400 a month. (Jacobowitz Dep. at 55.) He often pays this bill in cash at the telephone company's office and he always discards the bill and receipt provided to him. If he does not pay the telephone bill in person, he pays with a postal money order and disposes of the bill and money order receipt. The debtor continued to dispose of his telephone bills and receipts after Cadle first requested copies of them. (Hr'g Tr. at 62.)

On August 22, 2002, Cadle deposed the debtor and repeatedly requested documents from him. (Jacobowitz Dep. at 10, 55, 60, 68, 86, 125.) Notably, Cadle requested records of the business income that the debtor admittedly received from I. Levine during the first half of 2002. (*Id.* at 55.) The debtor conceded that he could request these documents from I. Levine. (*Id.*) The debtor failed to produce the requested documents (Hr'g Tr. 89–92) and Cadle commenced this adversary proceeding on October 30, 2002, seeking a denial of the debtor's discharge pursuant to 11 U.S.C. § 727(a)(3) for failure to keep adequate records.

The debtor filed an Answer and Cadle moved for summary judgment on February 12, 2003. The debtor responded to the motion but did not provide any additional documentation. On May 14, 2003, oral argument was held before the Bankruptcy Court. At oral argument, the Bankruptcy Judge scheduled an evidentiary hearing to provide the debtor with another opportunity to provide adequate records or to raise a genuine issue of material fact as to whether his failure to do so was justified. (Hr'g Tr. at 11.) The evidentiary hearing was held on June 27, 2003. The debtor

testified that he had no records to support the information he provided on his petition or tax returns. At the time of the hearing, the debtor claimed that he had no income "as of this moment." (*Id.* at 18). He conceded that I. Levine provided him a 1099 Form each year, but did not explain his failure to provide a record of his business income that he received during the first half of 2002. (*Id.* at 58–59, 89–90.) When asked whether the debtor had begun to save receipts and other pertinent documents concerning his business expenses subsequent to Cadle's request for these records, the debtor frankly admitted that he had continued to discard them. (*Id.* at 62.)

In his papers opposing Cadle's motion and at the evidentiary hearing on the matter, the debtor attempted to justify his failure to keep adequate records by claiming that he and his family lived in poverty and depended upon charity. The debtor offered census statistics that he contends establish that a family of nine with an income of $30,000 is living at or below the poverty level. He also offered a witness who testified that during the previous year the debtor's family had received food donations from a charitable organization.[6] After combing the fully developed factual record the Bankruptcy Court concluded that Cadle had offered evidence tending to show that the debtor's records were inadequate as a matter of law and that the debtor had failed to raise a genuine issue of material fact on the issue. Furthermore, the Bankruptcy Court held that the debtor's proffered justifications for his failure to keep records were also insufficient as a matter of law. Accordingly, summary judgment was entered in favor of Cadle denying the debtor discharge under § 727(a)(3).

---

6. The debtor also claims that he made charitable contributions of fifty dollars per month but he has provided no documentation of this. (Jacobowitz Dep. at 63.)

## DISCUSSION

### I. *Standard of Review*

██ On an appeal from the bankruptcy court, the district court cannot set aside the bankruptcy court's findings of fact unless those findings are clearly erroneous. *See* FED. R. BANK. P. 8013; *In re Dawnwood Props./78*, 209 F.3d 114, 116 (2d Cir. 2000). The bankruptcy court's legal conclusions are reviewed *de novo*. *See Dawnwood Props./78*, 209 F.3d at 116. Where the appellant challenges a grant of summary judgment, the appellate court reviews the lower court's ruling *de novo* because the determination that there are no genuine issues of material fact is a legal conclusion. *See FDIC v. Giammettei*, 34 F.3d 51, 54–55 (2d Cir.1994) (district court's grant of summary judgment is reviewed *de novo*); *Hanover Direct, Inc. v. T.R. Acquisition Corp. (In re T.R. Acquisition Corp.)*, No. 02 Civ. 8487, 2003 WL 21910860, at *4 (S.D.N.Y. Aug. 8, 2003) (the district court reviews a bankruptcy court's grant of summary judgment *de novo*); *Vanco Trading, Inc. v. Monheit*, No. 95 Civ. 02681, 1999 WL 464531, at *1 (D.Conn. June 17, 1999) (determination of whether a genuine issue of material fact exists is a question of law).

Summary judgment may be granted where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c); FED. R. BANK. P. 7056; *Anderson v. Liberty Lobby*, 477 U.S. 242, 247–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The burden rests on the movant to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine factual issue exists if there is sufficient evidence favoring the nonmovant for a reasonable jury to return a verdict in its favor. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

In deciding whether summary judgment is appropriate, the court resolves all ambiguities and draws all permissible factual inferences against the movant. *See id.* at 255, 106 S.Ct. 2505. To defeat summary judgment, the nonmovant must go beyond the pleadings and "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The court's role at this stage of the litigation is not to decide issues of material fact, but to discern whether any exist. *See Gallo v. Prudential Residential Servs., L.P.*, 22 F.3d 1219, 1224 (2d Cir. 1994).

### II. *Denial of Discharge Under § 727(a)(3)*

██ Chapter 7 of the Bankruptcy Code (the "Code") affords powerful relief to individuals saddled with oppressive debt by granting honest debtors a discharge from their dischargeable debts. This relief does not come without a price. Each individual debtor must liquidate his estate, allowing his creditors to reach a pro rata share of the debtor's non-exempt property. The debtor's creditors are entitled to fair treatment during this liquidation process and the longstanding rule in bankruptcy that "[c]omplete disclosure by the debtor is a quid pro quo for discharge of debts" stems from this duty of fair treatment. NORTON BANKR. LAW & PRAC. § 74:9 (2d. Ed.2003); *see also In re Underhill*, 82 F.2d 258, 259–60 (2d Cir.1936) ("Complete disclosure is in every case a condition precedent to the granting of a discharge . . . ."); *Frehm v. Harron (In re Harron)*, 31 B.R. 466, 468 (Bankr.D.Conn.1983). Section 727(a) provides that a discharge shall be denied when

the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or

preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case . . . .

11 U.S.C. § 727(a)(3). "The purpose of this section is to provide creditors and the court 'complete and accurate information concerning the status of the debtor's affairs and to test the completeness of the disclosure relevant to discharge,'" *Nof v. Gannon (In re Gannon)*, 173 B.R. 313, 321 (Bankr.S.D.N.Y.1994) (quoting *Meridian Bank v. Alten*, 958 F.2d 1226, 1230 (3d Cir.1992)), and "to ensure that the trustee and creditors receive sufficient information to trace a Debtor's financial history for a reasonable period past to present." *United States v. Trogdon (In re Trogdon)*, 111 B.R. 655, 658 (Bankr.N.D.Ohio 1990).

■■■ This provision does not require that a debtor maintain a bank account or "an impeccable system of bookkeeping." *Meridian Bank*, 958 F.2d at 1230. It merely requires that a debtor provide reasonable records so that his creditors may ascertain the debtor's present financial condition and the nature of any business transactions that occurred within a reasonable period prior to filing. *Id.; cf. Underhill*, 82 F.2d at 260. The party objecting to discharge has the burden of proving that the records offered by the debtor are inadequate. *See* FED. R. BANK. P. 4005. Once the objecting party has demonstrated that the debtor's failure to keep records has made it impossible to ascertain the debtor's financial condition and material business transactions, the burden shifts to the debtor to demonstrate that the failure to keep records was justified. *See Meridian Bank*, 958 F.2d at 1232–33. In

making this determination the court considers "'the education, experience and sophistication of the debtor; the volume of the debtor's business; the complexity of the debtor's business; the amount of credit extended to debtor in his business; and any other circumstances that should be considered in the interest of justice.'" *Id.* at 1231 (quoting *Milam v. Wilson (In re Wilson)*, 33 B.R. 689, 692 (Bankr.M.D.Ga. 1983)); *see also Barristers Abstract Corp. v. Caulfield (In re Caulfield)*, 192 B.R. 808, 823 (Bankr.E.D.N.Y.1996).

### A. Whether Cadle Satisfied Its Burden Under § 727(a)(3)

■■■ A party objecting to discharge under § 727(a)(3) must show: (1) that the debtor failed to keep or preserve adequate records; and (2) "that such failure makes it impossible to ascertain the debtor's financial condition and material business transactions." *Meridian Bank*, 958 F.2d at 1232. It is undisputed that the debtor was in the business of selling insurance. It is also undisputed that the debtor declared monthly business income of $8,000 on his bankruptcy petition and substantial business expenses relative to this business income. When a debtor is engaged in business, he has a duty to maintain records in a manner consistent with what is normally expected of businesses of the same complexity. *See In re Sandow*, 151 F.2d 807, 809 (2d Cir.1945); *Union Planters Bank, N.A. v. Connors*, 283 F.3d 896, 900 (7th Cir.2002); *cf. In re McCall*, 76 B.R. 490, 498 (Bankr.E.D.Pa.1987) (stating that when the debtor was not engaged in business a "lower degree of formality and record-keeping" was required). The debtor declared business income of $8,000 a month on his bankruptcy petition and operates in the insurance industry, which involves sophisticated business transac-

tions.[7] While this does not necessarily mean that he was required to keep detailed records of his business income and expenses, the debtor was required to produce at least minimal records to allow his creditors to "trace [the] Debtor's financial history for a reasonable period past to present." *Trogdon,* 111 B.R. at 658; *see also Baker v. Trachman,* 244 F.2d 18, 20 (2d Cir.1957) (noting that the fact that a business is small does not relieve that business from the duty to keep adequate records).

The debtor's 1999–2001 tax returns do not allow the debtor's creditors to ascertain the debtor's financial condition or reconstruct his business transactions. The debtor reported that he had substantial business income and expenses during the first half of 2002. The tax returns the debtor proffered contained no information regarding his finances for this period. This information was particularly relevant because from the information that the debtor provided on his bankruptcy petition, it was apparent that 2002 was proving to be a much more profitable year than 2001; the debtor's gross business income, which was only $16,582 for the entire year of 2001, had apparently spiked to $48,000 during the first half of 2002. However, the tax returns reflect only the debtor's reported annual revenues and business expenses, not his assets or net worth, and there is no assurance of their accuracy without supporting records. *See Malloy v. Goldstein (In re Goldstein),* 123 B.R. 514, 524–25 (Bankr.E.D.Pa.1991) ("[C]ase law has indicated · that copies of tax returns, even when prepared by an accountant from whatever records the accountant can garner ... are not a significant indicia of sufficient record keeping."); *see also*

*Krohn v. Frommann (In re Frommann),* 153 B.R. 113, 118 (Bankr.E.D.N.Y.1993). Furthermore, the returns in this case lack an adequate factual basis because they were prepared each year by an accountant who generally relied on nothing more than the debtor's memory to reconstruct the debtor's business expenses.

The debtor contends that his income is inconsequential when compared to his $3 million debt and, therefore, the tax returns provide his creditors with all they need to know about the debtor's financial condition. (Appellant Reply Br. at 3.) Assuming that a debtor who establishes a similar income-to-debt ratio is automatically entitled to a discharge, the debtor in this case has failed to produce records from which either his income or his business expenses could be determined. Thus, it is impossible to ascertain whether his debt is so large compared to his income or business assets that any objection to discharge would be futile.

Cadle identified specific documents that would allow it to ascertain the debtor's financial condition and requested those records. Although he conceded that he could obtain records documenting his business income, the debtor declined to provide the records after repeated requests and opportunities to do so. *See Turoczy Bonding Co. v. Strbac (In re Strbac),* 235 B.R. 880, 884 (6th Cir. BAP 1999) (affirming summary judgment where the debtor's records were incomplete and the debtor acknowledged the existence of records that would provide a more complete picture). Moreover, the debtor continued to discard records of his business expenses after Cadle had requested them.

---

**7.** As the Bankruptcy Court noted, the debtor was not a "casual laborer." *Jacobowitz,* 296

B.R. at 672.

 The debtor claims that Cadle has failed to demonstrate that it is impossible to ascertain the debtor's financial condition. According to the debtor, he was relieved of all responsibility to provide records because he told Cadle where it might obtain them and thus Cadle could have conducted an independent investigation if it wished to do so. (Appellant Br. at 11–12.) We disagree. The fact that a debtor directs its creditors to where they might obtain the records they seek does not relieve the debtor of his responsibility to provide adequate records. *See United States v. Craig (In re Craig)*, 252 B.R. 822, 828 (Bankr.S.D.Fla.2000).[8] The debtor is under an affirmative obligation to provide records that paint a true and accurate picture of the financial condition of the debtor at the time of filing. *See Underhill*, 82 F.2d at 260. Where the debtor is under a duty to keep or preserve records, a party objecting to discharge need show only that it cannot ascertain the debtor's financial condition and recent business transactions *from the records provided.* It is not necessary to show that there is no conceivable way to ascertain the financial condition of the debtor. If this were the case, before making an objection under § 727(a)(3) every creditor would be required to conduct a costly investigation whenever the debtor failed to produce adequate records. This result would be inconsistent with the debtor's duty to treat his creditors in bankruptcy fairly.

Because the debtor was involved in the business of selling insurance he was under a duty to maintain records to allow his creditors to ascertain his financial condition and recent business transactions. It is undisputed that the only records that the debtor has provided are his 1999–2001 tax returns. As discussed previously, these records are inadequate as a matter of law. Furthermore, Cadle has demonstrated that it is unable to ascertain the debtor's financial condition—the debtor reported income of $8,000 a month from business on his bankruptcy petition but has provided no record of this income or of the business expenses he allegedly incurred. Accordingly, Cadle has demonstrated that no genuine issue of material fact exists with respect to the adequacy of the debtor's records or its ability to ascertain the debtor's financial condition and business transactions from the proffered records.

### B. Whether the Debtor's Failure to Keep Adequate Records Was Justified

 Even where an objecting party makes out a prima facie case for denial of discharge under § 727(a)(3), discharge should still be granted if the debtor establishes that his failure to keep records was justified. *Meridian Bank*, 958 F.2d at 1233. The debtor argues that his failure to keep records is justified because he leads a life that does not create a paper trail. This contention is belied by the fact that the debtor acknowledged that while he often received receipts and bills pertaining to his business expenses, it was his practice to discard them soon after, if not

---

**8.** The debtor claims that *In re Dennis*, 330 F.3d 696, 703 (5th Cir.2003) "stands for the proposition that the creditor-plaintiff must prove that the records that the debtor failed to preserve prevented it from ascertaining the debtor's financial condition." (Appellant Reply Br. at 6.) The debtor misreads *Dennis*. In that case, the creditor claimed that the debtor, an unsophisticated wage earner, failed to provide bank or payroll records. However, the court found that the debtor in that case provided numerous bank and payroll records and other independent records and held that the creditor failed to meet its burden under § 727(a)(3) because the debtor maintained appropriate records. 330 F.3d at 703. Thus, *Dennis* does not stand for the debtor's stated proposition or otherwise support his position.

immediately upon, receipt. (Hr'g Tr. at 60, 62, 64, 67, 69, 75, 78, 80.) Thus, the absence of a paper trail is primarily due to the debtor's discarding of the business expense records that he did receive rather than to his not having received such records. Moreover, the debtor continued to discard documents requested by Cadle after it was apparent that Cadle intended to challenge his discharge on the ground that he failed to keep records. Although an individual may have every right to discard documents pertaining to his business and to decline to keep books reflecting his business transactions, if he chooses to do so he seriously jeopardizes his ability to seek shelter under Chapter 7 of the Code. The fact that the debtor chose to dispose of relevant records without keeping any independent record of his business income and expenses is an insufficient justification as a matter of law because: (1) the debtor had regular income from business of at least $8,000 a month at the time of his Chapter 7 petition and he declared business expenses equal to nearly half of that figure; and (2) he was engaged in the business of selling insurance, which involves sophisticated business transactions.

According to the debtor, his failure to keep records was justified under the circumstances because his "resources were depleted by meeting ordinary living expenses" and that he and his family live at or below poverty level. This argument conveniently ignores the fact that on the debtor's bankruptcy petition he declared income of $8,000 a month. While such an income would not put the debtor in the wealthy class, especially considering the size of the debtor's family, neither would it place him among the destitute. The debtor testified that his family relies on charity

for some of its clothing, food and housing needs. A representative of a charitable organization affiliated with the debtor's religious community testified that the organization provided some food to the debtor's family on a regular basis since the debtor filed for bankruptcy protection. (Hr'g Tr. at 105–06.) This testimony is insufficient to justify the debtor's failure to provide adequate records as a matter of law. Even if the debtor's income was at or below the poverty level[9] and his family relies in part upon charity, the debtor is not relieved of his responsibility to respond to reasonable requests from his creditors for records. *See Meridian Bank*, 958 F.2d at 1232 ("Certainly insolvency cannot be used as an excuse to avoid the obligation to provide records to illuminate that condition."). To hold otherwise would relieve all debtors who *claim* to be living in poverty from any obligation to provide adequate records even where they are involved in relatively sophisticated businesses. We do not think such an exception is warranted. If a debtor involved in business claims to have income at or below the poverty level and there are records that could support or refute this contention, the debtor must respond to reasonable requests from his creditors to provide such records, especially when they can be obtained by the debtor at little or no cost. Where a debtor simultaneously claims poverty and monthly business income of $8,000, requests for further documentation are reasonable as a matter of law.

Similarly, the debtor's contention that he is unsophisticated and uneducated does not justify his failure to provide any records besides his 1999–2001 tax returns. It is undisputed that the debtor was sophisti-

---

**9.** Whether the debtor's income at the time of filing was at or below the poverty level is impossible to determine because the debtor failed to produce any record of what his income was at that time.

cated enough to generate business income of $8,000 a month in the insurance industry when he filed his bankruptcy petition in June 2002. Even if the debtor had been completely naive with respect to the business world, Cadle's repeated requests for documents and directions as to where those documents might be obtained would have alerted any reasonable person to the importance of preserving the records and producing them in support of his claim for bankruptcy discharge. Moreover, the debtor had legal counsel to advise him. The Bankruptcy Judge scheduled an evidentiary hearing on this matter to give the debtor one last chance to provide some records or to raise an issue of material fact with respect to whether his failure to provide records was justified.[10] The debtor testified at that hearing that he had none of the requested records and the Bankruptcy Judge correctly ruled that the justifications he offered at that hearing are insufficient as a matter of law.

### C. The Absence of Allegations of Fraudulent Intent

■■■■ Finally, the debtor argues that discharge should be denied under § 727(a)(3) only when there is some evidence of fraudulent intent. We disagree. A party objecting to discharge under § 727(a)(3) is required to show only that the debtor's records are not reasonable in light of the circumstances, not that the debtor failed to keep records in order to deceive his creditors. See Goldstein, 123 B.R. at 525–26; Harman v. Brown (In re Brown), 56 B.R. 63, 66 (D.N.H.1985). The purpose of this section is to allow a determination of whether the debtor is indeed an honest debtor. When the debtor fails to keep records pertaining to his business

income and expenses, it is impossible for the debtor's creditors to formulate any objections to discharge. The fact that several of the cases relied upon by the Bankruptcy Court involved creditors that were obviously attempting to avoid their creditors by failing to keep records, see, e.g., Meridian Bank, 958 F.2d at 1234, does not require a different result. It merely demonstrates that debtors who fail to provide adequate records often do so to deceive their creditors. Although there is evidence in the record that tends to show that the debtor attempted to avoid his creditors in the past (Hr'g Tr. at 85–86), even if there were no evidence of such intent, we would still affirm the Bankruptcy Court's denial of discharge because fraudulent intent is not an element that a party objecting to discharge is required to prove under § 727(a)(3).

### D. The Bankruptcy Court's Order is Affirmed

We conclude that Cadle has offered evidence tending to show that the records offered by the debtor are inadequate because the debtor was under a duty to maintain records appropriate to his business and from the records provided it is impossible to ascertain the debtor's financial condition or reconstruct the debtor's recent business transactions. The debtor has failed to present any evidence sufficient to raise a genuine issue of material fact on this issue and his proffered justifications for his failure to provide records are insufficient as a matter of law. Therefore, the Order denying the debtor's discharge under § 727(a)(3) is affirmed.

---

**10.** The debtor contends that the Bankruptcy Judge's ruling showed a lack of compassion. We disagree. The Bankruptcy Judge gave the debtor numerous opportunities to provide some record of his financial condition and recent business transactions or justify his failure to do so.

## CONCLUSION

For the reasons stated herein the April 11, 2003, Order and Memorandum and Decision of the Bankruptcy Court is affirmed.

SO ORDERED.