In re Jerome KOWALSKI, Debtor.

Arthur H. Christy, the Finley Kumble Liquidation Trustee, and John S. Pereira, the Chapter 7 Trustee, Plaintiffs,

v.

Jerome Kowalski, Debtor/Defendant.

Bankruptcy No. 97–10160–608.
Adversary No. 97–1613.

United States Bankruptcy Court, E.D. New York.

Nov. 9, 2004.

Law Offices of John S. Pereira, New York City, for Chapter 7 Trustee.

Salans, New York City, for Arthur H. Christy, Successor to the Finley Kumble Liquidation Trustee.

Jerome Kowalski, Esq., Bronx, NY, for Defendant.

## DECISION

CARLA E. CRAIG, Bankruptcy Judge.

Arthur H. Christy, successor to Albert Togut, Liquidation Trustee of the Partner Settlement and Liquidation Trust established pursuant to the confirmed Chapter 11 plan of Finley, Kumble, Wagner, Heine, Underberg, Manley, Meyerson & Casey (the "Finley Kumble Trustee") and John S. Pereira, the Chapter 7 trustee (the "Chapter 7 Trustee", and together with the Finley Kumble Trustee, collectively, the "Plaintiffs"), have brought this adversary proceeding to object to the discharge of Jerome Kowalski ("Debtor"), a Chapter 7 debtor, pursuant to 11 U.S.C. § 727(a)(3), 11 U.S.C. § 727(a)(4)(A) and 11 U.S.C. § 727(a)(4)(D), claiming that the Debtor (a) failed to keep or preserve books and records from which the Debtor's financial condition or business transactions might be ascertained and that such failure was not justified under the circumstances of this case; and (b) knowingly and fraudulently made a false account and withheld information with respect to the Debtor's estate from the Plaintiffs, who were entitled to such information, by not providing accurate financial information including schedules of assets and liabilities and an accurate Statement of Financial Affairs.

For the reasons set forth below, the Debtor's discharge is hereby denied under section 727(a)(3).

### Jurisdiction

This Court has jurisdiction over this core proceeding under 28 U.S.C. §§ 1334(b) and 157(b)(2)(J) and the Eastern District of New York standing order of reference dated August 28, 1986. This Decision constitutes the Court's findings of fact and conclusions of law to the extent required by Fed. R. Bankr.P. 7052.

### Facts

The Debtor was a partner in the law firm of Finley, Kumble, Wagner, Heine, Underberg, Manley, Meyerson & Casey ("Finley Kumble"). Finley Kumble filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on February 24, 1988, in the Southern District of New York. As a partner in Finley Kumble, the Debtor is jointly and severally liable for the debts of the firm. Pursuant to the confirmed Chapter 11 plan of Finley Kumble, the Debtor became obligated to contribute approximately $200,000 to Finley Kumble's Partner Settlement Trust.

In the fall of 1987, the Debtor left Finley Kumble and joined the Parker, Chapin, Flattau and Kimpl law firm ("Parker Chapin"), where he stayed until approximately 1992 or 1993. (Tr. 120:2–4)[1] . After leaving Parker Chapin, the Debtor testified that he began his own solo practice. (Tr. 120:4–121:17). In 1995, the Debtor testified that he joined the law firm of Klepner and Cayea. (Tr. 127:10–14). The Debtor testified that in 1997 he was working at the law firm of Feltman Carush. (Tr. 138:21–22). However, the Debtor testified that he has not practiced law in "9 or 10 years". (Tr. 155:21–23).

On January 8, 1997, the Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. Following the filing of the petition, the Chapter 7 Trustee held several section 341 meetings at which the Chapter 7 Trustee asked the Debtor to provide various books and records pertaining to his pre-petition finances and transactions. The requested documents included, among other things, bank statements for each of the Debtor's four bank accounts (the "Accounts") for the previous two years, originals of cancelled checks for the Accounts for the same period and documents with respect to the Debtor's partnership in the Parker Chapin law firm (the "Partnership Documents").

To allow the Debtor time to collect and turn over these documents, the Chapter 7 Trustee obtained four extensions to the time in which to file objections to the Debtor's discharge. Despite these extensions of time during which the Debtor could have produced these documents, the Debtor failed to provide the Plaintiffs with either the requested documents or an adequate explanation justifying why he was unable to do so.

The Plaintiffs filed their complaint on December 29, 1997, requesting that the debtor's discharge be denied. A settlement of this adversary proceeding was approved on November 25, 2002, and the matter was closed on January 6, 2003; however, because of the Debtor's failure to fulfill his obligations under the settlement agreement, this adversary proceeding was reopened on September 30, 2003.

### Discussion

 A discharge in bankruptcy is intended to permit a honest debtor to obtain a fresh start free from debt. *Krohn v. Frommann (In re Frommann)*, 153 B.R.

---

1. "Tr." refers to the transcript of the trial held on June 29, 2004.

113, 116 (Bankr.E.D.N.Y.1993). The purpose of the Bankruptcy Code is to provide a procedure by which debtors can reorder their affairs, make peace with their creditors, and enjoy a new opportunity in life with a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt. *Id.* Such relief, however, is a privilege, not a right, and should only inure to the benefit of the "honest but unfortunate debtor." *Id.*

Section 727(a) of the Bankruptcy Code provides various grounds for denying a debtor's discharge. Section 727(a)(3) of the Bankruptcy Code states that:

(a) The court shall grant the debtor a discharge, unless—

(3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case. 11 U.S.C. § 727(a)(3).

■ The purpose of § 727(a)(3) is to insure that the trustee and the creditors receive sufficient information to enable them to trace the debtor's financial history, to ascertain the debtor's financial condition and to reconstruct the debtor's business transactions. *Frommann,* 153 B.R. 113, 116.

■ The party objecting to discharge has the burden of proof to show that the debtor has failed to maintain adequate books and records and that such failure renders it impossible to discern the debtor's true financial condition and identify material business transactions. *Krohn v. Cromer (In re Cromer),* 214 B.R. 86, 98 (Bankr.E.D.N.Y.1997).

In *In re Underhill,* the Second Circuit articulated a standard for evaluating the adequacy of a debtor's record keeping that is still applicable today:

The law is not unqualified in imposing a requirement [that the debtor's books and records]... be kept in any special form of accounts. It is a question in each instance of reasonableness in the particular circumstances. Complete disclosure is in every case a condition precedent to the granting of the discharge, and if such disclosure is not possible, without the keeping of books or records, then the absence of such amounts to that failure to which the act applies. 82 F.2d 258, 259–60 (2nd Cir.1936) (citations omitted).

■ The debtor is not necessarily required to adopt an impeccable system of bookkeeping, or to maintain records so complete that he can satisfy an expert in business. *McCord v. Sethi (In re Sethi),* 250 B.R. 831, 838 (Bankr.E.D.N.Y.2000) *citing In the Matter of John A. Esposito,* 44 B.R. 817, 826–27 (Bankr.S.D.N.Y.1984). Rather, the test is whether there is available written evidence from which the debtor's present financial condition, and his recent business transactions for a reasonable period in the past, may be ascertained with substantial completeness and accuracy. *Id. citing Barristers Abstract Corp. v. Caulfield (In re Caulfield),* 192 B.R. 808, 823 (Bankr.E.D.N.Y.1996).

■ It is up to the bankruptcy court's broad discretion to determine on a case by case basis whether the records produced by the debtor are sufficient. *Frommann,* 153 B.R. at 117. In reviewing an objection to a discharge based on the debtor's failure to keep books or records from which the debtor's financial condition may be ascertained, the court must be mindful of the debtor's obligation in a bankruptcy case to reveal, rather than con-

ceal, the complete financial picture. *Thaler v. Erdheim (In re Erdheim)*, 197 B.R. 23, 29 (Bankr.E.D.N.Y.1996) *citing In re Delancey*, 58 B.R. 762, 767–768 (Bankr. S.D.N.Y.1986). Intent to conceal the Debtor's financial condition is not a necessary element to support an objection to discharge for failure to keep books and records. 197 B.R. at 29 (citations omitted). When examining the debtor's circumstances, courts have focused on several factors, including:

1. Whether the debtor was engaged in business, and if so, the complexity and volume of the business;

2. The amount of the debtor's obligations;

3. Whether the debtor's failure to keep or preserve books and records was due to the debtor's fault;

4. The debtor's education, business experience and sophistication;

5. The customary business practices for record keeping in the debtor's type of business;

6. The degree of accuracy disclosed by the debtor's existing books and records;

7. The extent of any egregious conduct on the debtor's part; and

8. The debtor's courtroom demeanor.

*Frommann*, 153 B.R. at 117.

 Although the plaintiff has the burden of proving the inadequacy of the debtor's records, it is the debtor who has the obligation of producing financial records in the first place from which the debtor's financial condition may be ascertained. *Sethi*, 250 B.R. 831, 838 *citing Nisselson v. Wolfson (In re Wolfson)*, 139 B.R. 279, 286 (Bankr.S.D.N.Y.1992), *aff'd Nisselson v. Wolfson (In re Wolfson)*, 152 B.R. 830 (S.D.N.Y.1993). "The creditors and the court need not be required to guess what actually occurred because such specula-

tions do not serve as an adequate substitute for credible proof." *Id. citing State Bank of India, New York Branch v. Chachra (In re Chachra)*, 138 B.R. 397, 401 (Bankr.S.D.N.Y.1992).

 Once the court determines that the records produced by the debtor are insufficient to enable the court, the trustee or the creditors to determine the debtor's financial affairs and business transactions, the burden shifts to the debtor to justify any deficiencies. *Id.* at 838–839 *citing Wolfson*, 139 B.R. at 285. The debtor must show that the inadequate business records were justified under the circumstances. *Id.* at 839. The explanation must be more than just general assertions that records are no longer available. *Id. citing Adams v. Joseph (In re Joseph)*, No. 91–CV–1114, 1992 WL 96324, at *3 (N.D.N.Y. Apr. 22, 1992). "Moreover, the debtor may not, by oral testimony, supplement that information which is absent from the actual records." *Id. citing Pimpinella*, 133 B.R. at 698.

 Debtors have a duty to preserve those records that others in like circumstances would ordinarily keep. *Id. citing Caulfield*, 192 B.R. at 823. Hence, the debtor's honest belief that he does not need to keep the records in question, or that his records are sufficient, or a statement that it is not his practice to keep additional records does not constitute justification for failure to keep or preserve records under § 727(a)(3). *Pimpinella*, 133 B.R. at 698. "If the debtor's transactions were such that others in like circumstances would ordinarily keep financial records, then [the debtor] must show more than that '[he] did not comprehend the need for them and must carry [his] explanation by way of justification to the point where it appears that because of unusual circumstances [he] was under no duty to keep them.'" *Frommann*, 153 B.R. at

117, *citing In re Sandow,* 151 F.2d 807, 809 (2d Cir.1945).

In short, whether the debtor's failure to keep records was justified must be determined in light of all the circumstances of the case. *Cromer,* 214 B.R. at 99. A sophisticated debtor is generally held to a higher level of accountability in record keeping, and the more complex the debtor's financial situation, the more numerous and detailed the debtor's financial records should be. *Id.*

It is clear from the record that the Plaintiffs have established a prima facie case that the Debtor has produced insufficient books and records from which his financial condition or business transactions might be ascertained. The Debtor's failure to produce complete records of the Accounts, and to produce the Partnership Documents, has made it impossible for the Trustee, or other interested parties, to ascertain whether there are assets or causes of action (such as claims for the recovery of preferences or fraudulent conveyances) that might be pursued on behalf of the estate.

For example, the Debtor stated on his Schedule B—Personal Property, that he had an $18,000 interest in the Parker Chapin law firm. At trial, the Debtor testified that $18,000 was owed to him from Parker Chapin as the result of business that he had generated for the firm. (Tr. 125:21–23). The Debtor further testified that because of litigation that ensued in connection with Parker Chapin's representation of this client, which resulted in the firm having to pay a substantial amount in connection with a settlement, Parker Chapin refused to pay the Debtor. (Tr. 126:21–25). In addition to failing to produce the Partnership Documents (discussed below) the Debtor never produced any evidence with respect to the $18,000 he alleges was owed to him, the ensuing litigation or his communication with the Parker Chapin firm with respect to any attempts by the Debtor to recover the monies to which he testified he is owed.

The Debtor also listed on his Schedule B—Personal Property an unknown amount that he swears is due to him from his "former law firm"; however, the Debtor never specified to the Chapter 7 Trustee which "former" law firm owed him money or stated what amount he believes is owed to him. Nor did the Debtor ever produce to the Chapter 7 Trustee any evidence with respect to this account receivable.

The Debtor's production of bank statements to the Trustee was sketchy and inadequate; the Debtor failed to provide bank statements for the Accounts spanning significant portions of the two years prior to the filing of the Debtor's petition. The Chapter 7 Trustee requested that the Debtor produce twenty-four months worth of bank statements for each account on which the Debtor had signatory authority. For the Marine Midland/CMRI—Kowalski and Schub and Good Deal—Jerome Kowalski accounts, the Debtor only produced two months of bank statements. For the Republic National Bank/Personal—Jerome Kowalski account, the Debtor only produced six months of bank statements. For the Marine Midland/Business Extra2—Kowalski and Schub account, the Debtor has not produced any bank statements for calendar year 1996. In addition, the Debtor has failed to produce his 1996 Federal or state tax return.

A review of the eight factors enumerated in *Frommann* indicates that this Debtor could reasonably be expected to have maintained the personal and business records that were requested by the Plaintiffs. The Debtor has operated his own law practice and has been a partner or principal in three other New York City law practices.

His obligations, as reflected in his bankruptcy schedules, exceed $800,000. The Debtor has not provided any evidence to support his assertions that his failure to keep or preserve the requested books and records is not his fault and, as discussed below, the excuses the Debtor has provided are spurious. The Debtor is highly educated, having acquired a law degree from New York Law School. As an attorney, especially one who has operated a solo practice that requires the maintenance of client escrow accounts, the Debtor is well aware of the importance of keeping accurate business records. With respect to the degree of accuracy of the Debtor's existing books and records, it is impossible to determine the accuracy of these records without the underlying documents that the Debtor has failed to produce, such as a complete set of bank statements for the Accounts. The Debtor's courtroom demeanor reflected a very cavalier attitude toward his obligations, and the excuses he offered for his failure to maintain records were presented for the first time at trial and were wholly unsubstantiated and unpersuasive. In short, based upon the *Frommann* factors, this Court concludes that this Debtor has failed to keep or preserve sufficient records from which the Debtor's financial condition or business transactions may be ascertained.

Having shown that the Debtor has failed to preserve records, the Plaintiff's burden shifts to the Debtor to justify the deficiencies in his record keeping. This Court finds that the Debtor has not proven that the lack of adequate business records is justified under the circumstances of this case.

The Debtor asserts that he is unable to produce the documents that the Plaintiffs requested because some or all of the requested documents are either in the possession of his ex-wife, Lydia Kowalski, or were possibly lost in a flood that occurred in 1995 in his office at the law firm of Klepner and Cayea. The Debtor also asserted that other documents the Plaintiffs requested could have been obtained from another source and that the Debtor was therefore not responsible for providing them to the Plaintiffs.

▉ With respect to the Debtor's assertion that certain documents are in the possession of Mrs. Kowalski, the Debtor testified that while they were married, Mrs. Kowalski was responsible for maintaining the Debtor's books and records. (Tr. 122:18–23). The Debtor testified that, after their divorce, he requested on several occasions that Mrs. Kowalski return his personal and business records to him and that she refused his request each time. (Tr. 122:24–123:7). The Debtor also testified that his wife broke into his apartment on "several occasions", stealing records that the Debtor had retained when he moved out of their marital residence. (Tr. 123:22–124:8). The Debtor testified at trial that during one of these break-ins, Mrs. Kowalski was arrested. (Tr. 124:3–5).

The Debtor's unsubstantiated testimony that his wife is either in possession of the requested records, or, more fantastically, was responsible for stealing such records, is wholly unpersuasive. The Debtor offered no evidence at trial of Mrs. Kowalski's arrest nor did he offer any evidence that would indicate that Mrs. Kowalski remains in possession of any of the Debtor's records whatsoever. Indeed, the Debtor admitted at trial that the first time that he proffered this excuse to this Court, the Chapter 7 Trustee or any other party in interest was at the trial. (Tr. 129:25–131:5). It should be noted that there were extensive pre-trial proceedings in this action, including the submission of a Joint Pre–Trial Order in November 2000 when this matter was initially set for trial (prior

to the settlement and the Debtor's default thereunder). The Debtor's failure to mention this supposedly exculpatory fact in the Joint Pre–Trial Order or at any other time prior to trial leads to the conclusion that this unsubstantiated claim was subsequently fabricated by the Debtor. This conclusion is reinforced by the fact that the Debtor made a motion at the start of this trial to have Mrs. Kowalski (who was observing the trial) excluded from the courtroom on the pretext that he planned to call her as a witness, which he never did. (Tr. 17:11–18:18). Mrs. Kowalski was the only person at the trial who could have possibly corroborated the Debtor's testimony, yet the Debtor chose not to call her to testify, and indeed made sure that she did not hear his testimony. Where a party who might corroborate a debtor's story was not called as a witness by the debtor, courts have inferred that such party's testimony would have been unfavorable to the debtor. *See e.g., In re Unit,* 45 B.R. 425, 431–32 (Bankr.S.D.Ohio 1984), *O.F. Shearer & Sons v. Cincinnati Marine Service, Inc.,* 279 F.2d 68, 73 (6th Cir. 1960). However, even without drawing such an inference, the Debtor's testimony must be rejected as utterly lacking in credibility.

▉ With respect to the Debtor's assertion that a flood at his office at Klepner and Cayea had destroyed many of the requested documents, the Debtor could not be certain that any of the documents, other than his file in connection with his partnership with the Parker Chapin law firm, were in the documents that were destroyed in this flood. (Tr. 128:6–13). The Debtor testified on cross-examination that "perhaps" some bank statements that the Plaintiffs had requested were also lost in the flood. *Id.* Again, the Debtor offered no evidence to substantiate the occurrence of this flood nor evidence of what particu-

lar documents were destroyed by this flood. This testimony is also entirely unpersuasive.

▉ The Debtor's assertion that his failure to maintain records should not result in a denial of discharge because the Plaintiffs could have obtained some of the requested documents from another source must be rejected as contrary to the law. In *Jacobowitz v. The Cadle Company (In re Jacobowitz),* the United States District Court in the Southern District of New York reiterated the widely-accepted rule that "[t]he fact a debtor directs his creditors to where they might obtain the records they seek does not relieve the debtor of his responsibility to provide adequate records...[T]he debtor is under an affirmative obligation to provide records that paint a true and accurate picture of the financial condition of the debtor at the time of filing." 309 B.R. 429, 438 (S.D.N.Y.2004), *citing United States v. Craig (In re Craig),* 252 B.R. 822, 828 (Bankr.S.D.Fla.2000); *In re Underhill,* 82 F.2d 258, 260 (2nd Cir.1936); *see also Pimpinella,* 133 B.R. 694, 697 (Bankr. E.D.N.Y.1991); *Frommann,* 153 B.R. 113 (Bankr.E.D.N.Y.1993).

▉ The debtor also testified that he has had several health related problems since 1990 and has been hospitalized 8 to 10 times from 1990 to 2002 for various coronary procedures. (Tr. 122:3–8). Even were this Court to take the Debtor's word for it, as the Debtor did not submit any medical records in support of this testimony, the Debtor has not claimed that these health problems prevented him from keeping adequate records. The Debtor also stated that his separation from Mrs. Kowalski in 1993 was "very distracting." (Tr. 122:14–15). While the Debtor's separation from his wife may have been distracting in 1993, it does not account for the dearth of financial records that the Chapter 7 Trus-

tee requested for calendar years 1995 and 1996. In short, there is nothing in the record to indicate the presence of circumstances so unusual that ordinary record keeping was not required. *Sethi,* 250 B.R. at 842 *citing Pimpinella,* 133 B.R. at 698.

In sum, the records that the Debtor has provided are wholly insufficient for the Plaintiffs to ascertain the Debtor's true financial condition or his pre-petition business transactions and warrant a denial of discharge under section 727(a)(3).

Because this Court concludes that the Debtor's discharge must be denied under section 727(a)(3), it is not necessary to decide whether the Debtor's discharge should also be denied under section 727(a)(4)(A) or section 727(a)(4)(D).

The Trustee is directed to settle an order and judgment consistent with the foregoing.