**In re Menachem M. NEMES, Debtor.**

**Martin P. Ochs, Chapter 7 Trustee, Plaintiff,**

**v.**

**Menachem M. Nemes, Defendant.**

**Bankruptcy No. 03–23988ESS.**
**Adversary No. 04–1080–ESS.**

United States Bankruptcy Court,
E.D. New York.

March 22, 2005.

Martin P. Ochs, Ochs & Goldberg, LLP, New York City, for Chapter 7 Trustee.

Ahron Weissman, Barry R. Feerst P.C., New York City, for Debtor.

## MEMORANDUM DECISION GRANTING THE CHAPTER 7 TRUSTEE'S MOTION FOR SUMMARY JUDGMENT

ELIZABETH S. STONG, Bankruptcy Judge.

This adversary proceeding (the "Adversary Proceeding") was commenced by the filing of a complaint (the "Complaint") by Martin P. Ochs as Chapter 7 Trustee (the "Trustee" or "Plaintiff") of the bankruptcy estate of Menachem M. Nemes, the debtor in the above-captioned Chapter 7 case and the defendant in this Adversary Proceeding (the "Debtor"). The Trustee seeks an order denying the Debtor a discharge pursuant to Sections 727(a)(3), 727(a)(4)(D), and 727(a)(5) of the Bankruptcy Code. By his answer to the Complaint (the "Answer"), the Debtor denies the allegations of the Complaint, and asserts the affirmative defense that the Complaint fails to state a claim upon which relief can be granted.

The Trustee moves for summary judgment (the "Summary Judgment Motion") on the first cause of the action of the Complaint (the "First Cause of Action") which seeks the entry of an order denying the Debtor a discharge pursuant to Section 727(a)(3) of the Bankruptcy Code, and on the third cause of action of the Complaint (the "Third Cause of Action") which seeks an order denying the Debtor a discharge pursuant to Section 727(a)(5) of the Bankruptcy Code.

The matter came before the Court on October 19, 2004 (the "October 19 Hearing"), at which the Trustee and counsel for the Debtor appeared and were heard. After the October 19 Hearing and by letter dated October 19, 2004, the Debtor's attorney requested permission to reopen the Summary Judgment Motion record to supplement the Debtor's submissions with certain credit card records obtained by the Office of the United States Trustee (the "UST Credit Card Records"). The Debtor's request was granted and the record was reopened to permit the Debtor to supplement the record with the UST Credit Card Records, and to permit the Trustee to file supplemental papers in response to the UST Credit Card Records.

After consideration of the submissions, the arguments of the Trustee and counsel for the Debtor, the entire record before the Court, and for the reasons set forth below, the Trustee's Summary Judgment Motion as to the First Cause of Action is granted.

### Jurisdiction

This Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b) and 157(b)(2)(J). The following are the Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable by Rule 7052 of the Federal Rules of Bankruptcy Procedure.

### Background

A. *Procedural History*

The Debtor filed for relief under Chapter 7 of Title 11 of the United States Code

(the "Bankruptcy Code") on October 24, 2003 (the "Petition Date"). The Trustee was appointed as interim Chapter 7 trustee, and thereafter qualified to become the permanent Chapter 7 trustee of the Debtor's estate.

The Trustee filed the Complaint on February 2, 2004. The Complaint seeks to deny the Debtor a discharge based on the Debtor's alleged unjustified acts or failures to act with respect to his books and records under Section 727(a)(3); the Debtor's alleged knowing and fraudulent withholding of recorded information relating to his property and financial condition under Section 727(a)(4)(D); and the Debtor's alleged failure satisfactorily to explain the deficiency of assets to meet his liabilities under Section 727(a)(5). The Debtor filed an Answer on February 16, 2004, in which he denies the allegations of the Complaint and asserts the affirmative defense that the Complaint fails to state a claim upon which relief may be granted.

On September 9, 2004, the Trustee filed the Summary Judgment Motion seeking summary judgment on the First and Third Causes of Action, the supporting Affidavit of Martin P. Ochs in Support of Plaintiff's Motion for Summary Judgment (the "Trustee's Aff."), Plaintiff's Statement Pursuant to Local Bankruptcy Rule 7056–1 in Support of Plaintiff's Motion for Summary Judgment, and Plaintiff's Memorandum of Law in Support of Motion for Summary Judgment (the "Trustee's Mem.").

On October 14, 2004, the Debtor filed the Declaration of Menachem M. Nemes in Opposition to Motion for Summary Judgment (the "Nemes Decl."), the Declaration of Ahron Weissman in Opposition to Mo-

tion for Summary Judgment, the Declaration of Barry R. Feerst in Opposition to Motion for Summary Judgment (the "Feerst Decl."), and the Defendant's Memorandum of Law (the "Debtor's Mem."). On October 18, 2004, the Debtor filed a Statement Pursuant to Local Bankruptcy Rule 7056–1.

On October 18, 2004, the Trustee filed the Reply Affidavit of Martin P. Ochs in Further Support of Plaintiff's Motion for Summary Judgment (the "Trustee's Reply Aff."). On November 11, 2004, the Debtor submitted the UST Credit Card Records in further opposition to the Summary Judgment Motion. On November 18, 2004, the Trustee filed an affidavit in response to the submission of the UST Credit Card Records (the "Trustee's Aff. in Resp. to the UST Credit Card Records").

### B. Facts

The Debtor's Petition lists assets of $1,725 and liabilities of $114,754.94. Petition, Schedules B and F. The Debtor's assets consist of cash on hand of $75, a checking account containing $50, household goods valued at $500, wearing apparel valued at $500, and a 1988 Mercury Grand Marquis automobile valued at $600. Petition, Schedule B. The Debtor claims that his household goods, wearing apparel, and automobile are exempt property under New York State law. Petition, Schedule C. According to the Debtor's Amended Schedule F, his liabilities of $114,754.94, consist of unsecured debt, the majority of which was incurred through the use of approximately twelve credit cards and two credit lines from 1996 or earlier to 2003.[1] Petition, Amended Schedule F.

---

1. The Debtor's Schedule F filed with his Petition listed unsecured debt incurred between 2000 and 2003. On April 26, 2004, the Debtor filed an amended Schedule F that shows unsecured debt incurred between 1996 or earlier and 2003. The Trustee argues that the Debtor amended Schedule F after this Adversary Proceeding was commenced to support

The Debtor has been employed for seventeen years as a youth worker and teacher by Tzivos Hashem and Yeshivah Chanoch Lenaar. Petition, Schedule I; Nemes Decl., Exh. 3. The Debtor also conducted a counseling business from his home and was a counselor for the Federal Emergency Management Agency from June 2002 to August 2002. Statement of Financial Affairs, Item 18; Nemes Decl., Exh. 3. The Debtor attended Ohalei Torah High School from 1973 to 1977 and did not earn a secular high school degree, and attended United Lubavitcher Yeshivos from 1978 to 1983 and earned a rabbinical degree. Nemes Decl., Exh. 3.

On December 5, 2003, the Trustee conducted an examination of the Debtor pursuant to Section 341 of the Bankruptcy Code (the "341 Meeting"). Trustee's Aff. ¶ 4. At the 341 Meeting, the Trustee asked the Debtor to produce statements for all of his credit cards, credit lines, and bank accounts in order to permit him to investigate the Debtor's financial situation, including the nature and extent of the Debtor's unsecured debt and assets. Trustee's Aff. ¶ 7.

On December 15, 2003, the Debtor's attorney provided documents to the Trustee. These documents included copies of letters dated December 8, 2003, from the Debtor to approximately twelve credit card issuers seeking copies of his credit card statements for the prior two years, and the Debtor's Federal income tax returns for 2001 and 2002 (the "December 15 Documents"). Trustee's Aff. ¶ 9 and Exh. 2. By letter dated December 15, 2003 (the "December 15 Letter"), the Debtor's attorney stated that the Debtor's gross earnings for 2001 were $15,124, his gross earnings for 2002 were $18,639, and that "the substan-

tial majority of [the Debtor's] credit card debt was incurred in support of the basic living expenses of him and his family." Trustee's Aff., Exh. 2.

After this Adversary Proceeding was commenced, by letter dated May 3, 2004 (the "May 3 Letter"), the Debtor's attorney provided additional documents to the Trustee. These documents included two letters from American Express dated January 21, 2004, and February 13, 2004, one stating that documents requested by the Debtor would be produced only in response to a subpoena; a Con Edison statement of account in the name of "Isaac Nemes" showing payments for service at the Debtor's address from December 26, 2001, to January 5, 2004; the Debtor's W-2 wage and tax statements showing 2002 wages of $14,660, and 2001 wages of $14,660; the Debtor's family's "Patient Financial History" for the period July 2, 2002, to November 26, 2003, showing payments totaling $3,271.44 to Eli Nathan Rosen, M.D.; seven checks in the amount of $202.17 and one check in the amount of $202.46 payable to the Debtor from Yeshiva Chanoch Lenaar for the period September 12, 2003, to October 31, 2003; four monthly statements for 2003 for one credit line; seven monthly statements for 2002 and four monthly statements for 2003 for another credit line; the Debtor's Federal income tax returns for 2001 and 2002 (previously produced with the December 15 Documents) and the Debtor's New York State income tax return for 2002; the Debtor's Federal income tax return for 2000; four receipts for rent payments in 2003 in the amounts of $278.17, $203.46, $76, and $282; monthly statements from November 2001 to November 2003 for one of the Debtor's scheduled credit card ac-

---

his argument that his debts are older than originally stated in his Petition. Trustee's Reply Aff. ¶ 20.

counts; two monthly statements for 2002 for one of the Debtor's scheduled credit card accounts; and one monthly statement for 2003 for each of six of the Debtor's scheduled credit card accounts (collectively, the "May 3 Documents"). The May 3 Letter stated that the Debtor is "unaware of any individuals likely to have discoverable information, except for Diana Adams, Esq., at the U.S. Department of Justice, Office of the United States Trustee." Trustee's Aff. ¶ 12, Exh. 5.

On June 2, 2004, the Trustee served a Notice of Deposition of the Debtor for June 23, 2004. Trustee's Aff. ¶ 15. Neither the Debtor nor his attorney contacted the Trustee in response to the Notice of Deposition or appeared for the deposition on the noticed date. Trustee's Aff. ¶ 16. As a result, the Trustee was not able to examine the Debtor under oath on the matters raised in the Complaint. Trustee's Reply Aff. ¶ 13. The Debtor's attorney states that Debtor's failure to appear and be deposed was "solely the fault of his attorney and he should not be penalized for the failure of his attorneys." Feerst Decl. ¶ 2.

After the October 19 Hearing, the Debtor's attorney was granted leave to supplement the Debtor's submissions in opposition to the Summary Judgment Motion. By letter dated November 11, 2004 (the "November 11 Letter"), the Debtor's attorney submitted the UST Credit Card Records.[2] The UST Credit Card Records include an analysis of the three-month period August 1998 to October 1998 for seven of the Debtor's twelve scheduled credit card accounts; a worksheet showing either the date when the Debtor opened his credit card account or the date of the earliest available bill for those accounts; and certain monthly statements for eight of the Debtor's credit card accounts, including five accounts listed by the Debtor in his Petition and three additional unscheduled accounts.

### Discussion

#### A. The Standard for Summary Judgment

The Trustee seeks summary judgment on the First Cause of Action and the Third Cause of Action of the Complaint. Federal Rule of Civil Procedure 56, made applicable to bankruptcy matters by Bankruptcy Rule 7056, provides that summary judgment is appropriate when " 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' " *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed. R.Civ.P. 56(c)). *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "A fact is material only if it affects the result of the proceeding and a fact is in dispute only when the opposing party submits evidence such that a trial would be required to resolve the differences." *Hassett v. Altai, Inc. (In re CIS Corp.)*, 214 B.R. 108, 118 (Bankr.S.D.N.Y.1997).

The moving party has the burden of demonstrating the absence of any genuine issue of material fact, and all of the inferences to be drawn from the underlying

---

**2.** The Trustee objects to the UST Credit Card Records on grounds that the Debtor does not state by affidavit how the charges were incurred, who prepared the analysis and worksheet, or how they were qualified to do so. Trustee's Aff. in Resp. to UST Credit Card Records ¶¶ 4–5.

facts must be viewed by the Court in the light most favorable to the party opposing the motion. *See Anderson,* 477 U.S. at 249, 106 S.Ct. 2505. At the same time, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts" to defeat a motion for summary judgment. *Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348. Rather, the nonmoving party must present "significant probative evidence" that a genuine issue of fact exists. *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue of fact for trial" and summary judgment is appropriate. *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348. *See Weinstock v. Columbia Univ.,* 224 F.3d 33, 41 (2d Cir.2000), *cert. denied,* 540 U.S. 811, 124 S.Ct. 53, 157 L.Ed.2d 24 (2003).

### B. Denial of the Debtor's Discharge Under Section 727(a)(3)

"Chapter 7 of the Bankruptcy Code ... affords powerful relief to individuals saddled with oppressive debt by granting honest debtors a discharge from their dischargeable debts." *Jacobowitz v. The Cadle Co. (In re Jacobowitz),* 309 B.R. 429, 435 (S.D.N.Y.2004). As the court found in *Christy v. Kowalski (In re Kowalski),* 316 B.R. 596 (Bankr.E.D.N.Y.2004):

> A discharge in bankruptcy is intended to permit a honest debtor to obtain a fresh start free from debt.... The purpose of the Bankruptcy Code is to provide a procedure by which debtors can reorder their affairs, make peace with their creditors, and enjoy a new opportunity in life with a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt.... Such relief, however, is a privilege, not a right, and should only inure to the bene-

fit of the "honest but unfortunate debtor."

*In re Kowalski,* 316 B.R. at 600–01 (citations omitted).

■ Not every debtor seeking bankruptcy protection will be entitled to a discharge. But "objections to discharge must be strictly construed against the objector and in favor of the debtor" because "the underlying purpose of the Bankruptcy Code is to grant the honest debtor a 'fresh start.'" *McCord v. Sethi (In re Sethi),* 250 B.R. 831, 839 (Bankr.E.D.N.Y.2000).

Section 727(a) of the Bankruptcy Code lists several grounds on which a discharge may be denied. Section 727(a)(3) provides that a debtor's discharge should be denied if:

> the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case.

11 U.S.C. § 727(a)(3).

■ Section 727(a)(3) aims to assure that the Chapter 7 trustee has access to information about the debtor's financial condition that is necessary for him or her to discharge his duties to the bankruptcy estate and to creditors. As the Third Circuit observed:

> The purpose of section 727(a)(3) is to give creditors and the bankruptcy court complete and accurate information concerning the status of the debtor's affairs and to test the completeness of the disclosure requisite to a discharge. *See* 4 COLLIER ON BANKRUPTCY ¶ 727.03[1] (15th ed.1979). The statute also ensures that the trustee and creditors are supplied with dependable information on which

they can rely in tracing a debtor's financial history. Creditors are not required to risk having the debtor withhold or conceal assets "under cover of a chaotic or incomplete set of books and records." *Meridian Bank v. Alten*, 958 F.2d 1226, 1230 (3d Cir.1992) (quoting *Cox v. Lansdowne (In re Cox)*, 904 F.2d 1399, 1401 (9th Cir.1990)).

Courts and creditors alike depend on a Chapter 7 trustee's ability promptly to review and investigate a debtor's situation, so that the trustee may determine whether further steps, including an examination under Bankruptcy Rule 2004, a turnover, preference, or fraudulent transfer action, or a challenge to the debtor's discharge, should be taken. *See* Fed. R. Bankr.P. 2004; 11 U.S.C. §§ 542 (turnover of property), 547 (preference), 548 (fraudulent transfer).

■ Nearly seventy years ago, the Second Circuit described the standard for assessing the adequacy of a debtor's disclosure and record-keeping. In *In re Underhill*, 82 F.2d 258 (2d Cir.), *cert. denied*, 299 U.S. 546, 57 S.Ct. 9, 81 L.Ed. 402 (1936), the court denied the debtor a discharge because he failed to keep records showing the disposition of both his own property and property for which he was a trustee. *In re Underhill*, 82 F.2d at 260. The court emphasized the twin principles that adequate documentation will depend on the circumstances of the particular case, but complete disclosure is required in every case. As the court stated:

> [T]he law ... does not require that [the debtor's books and records] ... be kept in any special form of accounts. It is a question in each instance of reasonableness in the particular circumstances. Complete disclosure is in every case a condition precedent to the granting of a discharge, and if such disclosure is not possible, without the keeping of books or

records, then the absence of such amounts to that failure to which the act applies.

*In re Underhill*, 82 F.2d at 259–60.

■ Courts consider several factors in determining whether the circumstances warrant a denial of discharge under Section 727(a)(3). These include:

> "whether a debtor was engaged in business and, if so, the complexity and volume of the business; the amount of the debtor's obligations; whether the debtor's failure to keep or preserve books and records was due to the debtor's fault; the debtor's education, business experience and sophistication; the customary business practices for record keeping in the debtor's type of business; the degree of accuracy disclosed by the debtor's existing books and records; the extent of any egregious conduct on the debtor's part; and the debtor's courtroom demeanor."

*Krohn v. Frommann (In re Frommann)*, 153 B.R. 113, 117 (Bankr.E.D.N.Y.1993) (quoting *Vandenbogart v. Minesal (In re Minesal)*, 81 B.R. 477, 481 (Bankr. E.D.Wis.1988)).

■ Thus, the purpose of Section 727(a)(3) is not record-keeping for its own sake, nor is "the debtor ... required to keep an impeccable system of bookkeeping or records so complete that he can satisfy an expert in business." *In re Sethi*, 250 B.R. at 838. Rather, "[t]he fundamental policy underlying § 727(a)(3) is to insure that the trustee and the creditors receive sufficient information to effectively enable them 'to trace the debtor's financial history, to ascertain the debtor's financial condition, and to reconstruct the debtor's business transactions.'" *In re Frommann*, 153 B.R. at 116 (quoting *Malloy v. Goldstein (In re Goldstein)*, 123 B.R. 514, 522 (Bankr.E.D.Pa.1991)). "In reviewing

an objection to discharge based on the debtor's failure to keep books or records from which the debtor's financial condition may be ascertained, the court must be mindful of the debtor's obligation in a bankruptcy case to reveal, rather than conceal, the complete financial picture." *In re Sethi*, 250 B.R. at 838.

*Whether the Debtor kept adequate records*

The Trustee bears the burden of proof as to the inadequacy of the Debtor's records to ascertain his financial condition and business transactions. *Wazeter v. Michigan Nat'l Bank (In re Wazeter)*, 209 B.R. 222, 227 (W.D.Mich.1997); *Thaler v. Erdheim (In re Erdheim)*, 197 B.R. 23 (Bankr.E.D.N.Y.1996); Fed. R. Bankr.P. 4005. The Trustee must show "(1) that the debtor failed to keep or preserve adequate records; and (2) 'that such failure makes it impossible to ascertain the debtor's financial condition and material business transactions.'" *In re Jacobowitz*, 309 B.R. at 436 (quoting *Meridian Bank*, 958 F.2d at 1232).

Credit card records and bank statements are among the kinds of documents that give rise to challenges to a debtor's discharge under Section 727(a)(3). "While bank statements and credit card receipts or monthly statements may be simple records, they 'form the core' of what [is necessary] to ascertain [the Debtor's] financial condition, primarily his use of cash assets." *The Cadle Co. v. Terrell*, 2002 WL 22075, at *5 (N.D.Tex. Jan. 7, 2002), *aff'd*, 46 Fed.Appx. 731, 2002 WL 1973217 (5th Cir. July 30, 2002). It is not necessary to show that the Debtor willfully concealed or destroyed his records, as intent is not a necessary element of an objection to discharge under Section 727(a)(3). *In re Kowalski*, 316 B.R. at 602.

If the trustee meets his or her initial burden of showing that the records are insufficient to ascertain the debtor's financial condition and business transactions, then the burden of coming forward shifts to the debtor to produce " 'additional credible evidence to rebut the proof of insufficient records, or to justify the absence of records.'" *In re Erdheim*, 197 B.R. at 29 (quoting *United States Fidelity & Guaranty v. Delancey (In re Delancey)*, 58 B.R. 762, 767–68 (Bankr.S.D.N.Y.1986)).

Here, the Debtor does not dispute the Trustee's allegation that he did not maintain adequate records. *See* Defendant's Mem. at 3–4. Rather, the Debtor argues that his failure to maintain adequate records was justified under the particular circumstances. *Id.* Nevertheless, the Trustee must establish a prima facie case for denial of the Debtor's discharge under Section 727(a)(3). Accordingly, the Court first considers whether the Trustee has established that there is no material issue of disputed fact as to the adequacy of the Debtor's records to ascertain the Debtor's financial condition and business transactions.

The Debtor's Petition shows that he has assets of some $1,725, and seeks to discharge almost $115,000, in unsecured debt arising primarily from the use of at least twelve credit cards and two lines of credit. The record further reflects that the Trustee sought production from the Debtor of statements for all of his credit and bank accounts in order to ascertain how the Debtor incurred a relatively large amount of unsecured debt in relation to his assets. Trustee's Aff. ¶ 7.

The record shows that in response, the Debtor produced tax documents including Federal tax returns for 2000, 2001, and 2002, a New York State tax return for 2002, and W–2 wage and tax statements for 2001 and 2002. *See* December 15 Documents, May 3 Documents. The record

also shows that the Debtor produced documents relating to the Debtor's income in the form of eight checks payable to the Debtor from Yeshiva Chanoch Lenaar for September 12, 2003 to October 31, 2003. *See* May 3 Documents.

The record further shows that with respect to the Debtor's unsecured debt, the Debtor produced four monthly statements for 2003 for one credit line and seven monthly statements for 2002 and four monthly statements for 2003 for another credit line; monthly statements from 1997 or 1998 to November 2003 or February 2004 for four scheduled credit card accounts; one monthly statement for 2003 for each of four scheduled credit card accounts; monthly statements from March 1998 to May 2002 for one scheduled credit card account; monthly statements from March 1997 to May 2003 for two scheduled credit card accounts; no monthly statements for one scheduled credit card account; and certain monthly statements from 1997 or 1998 to 2002 or 2003 for three additional, unscheduled credit card accounts. *See* May 3 Documents; UST Credit Card Records. The record further shows that the credit card statements produced by the Debtor all reflect existing balances. *Id.*

Viewed another way, the record shows that the Debtor produced monthly statements for at least two years preceding the Petition Date for scheduled unsecured debt totaling approximately $31,750. The record also shows that the Debtor produced no statements for scheduled unsecured debt totaling approximately $11,413, and one monthly statement per credit card account for scheduled unsecured debt totaling approximately $16,752. The record further shows that the Debtor produced monthly statements but omitted five months preceding the Petition Date for scheduled unsecured debt totaling approxi-

mately $26,969, and produced monthly statements but omitted seventeen months preceding the Petition Date for scheduled unsecured debt totaling approximately $15,739. The record shows that the Debtor produced eleven monthly statements but omitted five months preceding the Petition Date for scheduled unsecured date totaling approximately $5,066, four monthly statements for scheduled unsecured debt totaling approximately $6,957, and records indicating that the Debtor may have additional unscheduled unsecured debt arising from at least three additional credit card accounts. *See* May 3 Documents, UST Credit Card Records, Petition, Amended Schedule F.

In sum, the record shows that the Debtor produced incomplete credit card records for the two years preceding the Petition Date for approximately $82,896, or more than two-thirds, of his scheduled unsecured debt, incurred through the use of seven credit cards and two credit lines. The record also shows that the Debtor may not have scheduled all of his unsecured debt. The record further shows that the Debtor failed to appear to be examined at his deposition. Whether that failure is attributable to him or to his attorney, it had the predictable effect of preventing the Trustee from examining him on his financial condition and business transactions. *See* Trustee's Aff. in Resp. to the UST Credit Card Records ¶ 10.

For all of these reasons, and based on the entire record, the Court finds that the documents retained by the Debtor and produced to the Trustee in the December 15 Documents and the May 3 Documents, taken together with the UST Credit Card Records, do not enable the Trustee to ascertain the Debtor's financial condition or business transactions, and in particular, do not provide sufficient information for the Trustee to determine when or for what

purpose the Debtor incurred almost $115,000, in unsecured debt.

*Whether the Debtor's failure to keep adequate records was justified*

■ The determination that the Debtor did not maintain adequate financial records does not complete the Court's inquiry under Section 727(a)(3). "Even where an objecting party makes out a prima facie case for denial of discharge under § 727(a)(3), discharge should still be granted if the debtor establishes that his failure to keep records was justified." *In re Jacobowitz*, 309 B.R. at 438.

■ "The Bankruptcy Code does not specify what constitutes justification for maintaining inadequate records; instead it requires the trier of fact to make a determination based on all the circumstances of the case." *Meridian Bank*, 958 F.2d at 1231. No single factor or set of factors will be determinative in every case. Rather:

> "The issue of justification depends largely on what a normal, reasonable person would do under similar circumstances. The inquiry should include the education, experience and sophistication of the debtor; the volume of the debtor's business; the complexity of the debtor's business; the amount of credit extended to debtor in his business; and any other circumstances that should be considered in the interest of justice."

*Meridian Bank*, 958 F.2d at 1231 (quoting *In re Wilson*, 33 B.R. 689, 692 (Bankr. M.D.Ga.1983)). As one court observed:

> The final disposition ... must be made in light of the purpose of the discharge exception, which is to preserve fair dealing by making the debtor's right to discharge dependent upon the debtor's ability to account, via written record, for his or her financial condition.

*Anderson v. Wiess (In re Wiess)*, 132 B.R. 588, 592 (Bankr.E.D.Ark.1991).

Courts have found justification where the debtor's records were lost as the result of circumstances beyond the debtor's control, including "an outside or destructive force" such as a robbery or fire. *In re Wiess*, 132 B.R. at 592. *See, e.g., G & J Investments v. Zell (In re Zell)*, 108 B.R. 615 (Bankr.S.D.Ohio 1989) (the debtor's business office was vandalized, her records were stolen, and her computer was destroyed); *Ford Motor Credit Co. v. Branch (In re Branch)*, 54 B.R. 211 (Bankr.D.Colo.1985) (the debtor's records were lost in a fire); *Fox v. Cohen (In re Cohen)*, 47 B.R. 871 (Bankr.S.D.Fla.1985) (robberies, vandalism, and a fire occurred where the debtor's personal records were stored).

Courts have also found justification where a combination of factors, including the debtor's personal situation and circumstances beyond the debtor's control, led to the failure to preserve records. For example, in *Strzesynski v. Devaul (In re Devaul)*, 318 B.R. 824 (Bankr.N.D.Ohio 2004), the court concluded that three factors, taken together, justified the debtor's failure to maintain adequate records:

> [The debtor] lacked the ability to prepare his own tax returns and organize and maintain records due to his limited education; he depended on others to assist him; and the documents disposed of were discarded not by him but by a friend to whom he turned for assistance.

*In re Devaul*, 318 B.R. at 838. *See also Hutzelman v. Luhman (In re Luhman)*, 146 B.R. 163, 166 (Bankr.W.D.Pa.1992) (oral motion under Section 727(a)(3) and written motion under Section 727(a)(5) denied on grounds that the debtor, who had a history of drug addiction, "satisfactorily explained the use of funds," "adequately explained any loss of assets or deficiency

of assets to meet [his] liabilities," and was justified in not retaining records of his personal transactions).

■ Here, the Debtor argues that his failure to maintain adequate financial records is justified because he is an "unsophisticated wage earner, who did not operate a business of any sort, [and] has only an eighth grade education." Debtor's Mem. at 4; Nemes Decl. n. 1. The Debtor also asserts that he has a very low income. Nemes Decl. ¶ 9. In addition, the Debtor claims that he "did not plan to declare bankruptcy" and therefore "saw no reason to maintain any of [his] credit card records." Nemes Decl. ¶ 12. Finally, the Debtor asserts that he "resides in a four room apartment with [his] wife [and children], with a living room serving as a bedroom at night and maintaining old credit card records was not understood by [him] to be a crucial day to day requirement." Nemes Decl. ¶ 13.

The Court is not persuaded by the Debtor's arguments. First, the record weighs against the Debtor's assertion that his failure to maintain adequate financial records is justified because he is an unsophisticated wage earner with only an eighth grade education. The record shows that the Debtor has been employed for seventeen years as a teacher at Yeshiva Chanoch Lenaar and as a youth worker at Tzivos Hashem. The record also shows that the Debtor operated a counseling business for

two months in 2002 and was a counselor at the Federal Emergency Management Agency. Statement of Financial Affairs, Item 18; Nemes Decl., Exh. 3. The Debtor's 2002 Federal income tax return shows that his counseling business generated gross receipts of $11,974 and expenses of $7,692, yielding a profit of $4,282. *See* December 15 Documents. That is, the Debtor has held regular and steady employment for many years in education and operated a successful business performing counseling services for a Federal agency.

The record further shows that the Debtor attended United Lubavitcher Yeshivos from 1978 to 1983 and earned a rabbinical degree. Nemes Decl., Exh. 3. Thus, while the Debtor's formal secular education ended in the eighth grade, he had the benefit of several additional years of formal education.[3]

■ Second, the Debtor's low income does not relieve him of his requirement to satisfy the requirements of Section 727. The record shows that the Debtor earned $14,660 in 2001, $18,942 in 2002, and $8,940 in 2003, and that this income places the Debtor at or near the U.S. Department of Health and Human Services poverty guidelines. Nemes Decl. ¶ 9; *see also* December 15 Documents, May 3 Documents. But:

> Even if the debtor's income was at or below the poverty level and his family

---

**3.** The Debtor also relies on *Goff v. Russell Co. (In re Goff)*, 495 F.2d 199 (5th Cir.1974), where the court concluded that the court below did not err in denying a discharge to a debtor who operated several retail stores, and directed the court below to consider whether the debtor should be allowed a reasonable time to produce adequate documentation of his financial status. The court also observed that "an unsophisticated wage earner dealing primarily in cash should not be denied a discharge because he failed to keep books of account," contrasting that situation to the cir-

cumstance of the debtor before the court. *In re Goff*, 495 F.2d at 201.

Here, even if the Debtor is viewed as "an unsophisticated wage earner," the record does not show that he deals primarily in cash. Indeed, the Debtor argues that "the substantial majority of his credit card debt was incurred in support of the basic living expenses of him and his family." Trustee's Aff., Exh. 2. The record also shows that the Debtor had the opportunity to subpoena records and to testify to explain these circumstances, but elected not to do so. *See* p. 20, *infra*.

relies in part upon charity, the debtor is not relieved of his responsibility to respond to reasonable requests ... for records. *See Meridian Bank*, 958 F.2d at 1232 ("Certainly insolvency cannot be used as an excuse to avoid the obligation to provide records to illuminate that condition."). To hold otherwise would relieve all debtors who *claim* to be living in poverty from any obligation to provide adequate records even where they are involved in relatively sophisticated business. We do not think such an exception is warranted.

*In re Jacobowitz*, 309 B.R. at 439 (emphasis in original) (footnote omitted).

 Third, the Debtor's assertions that he "did not plan to declare bankruptcy" and therefore "saw no reason to maintain any of [his] credit card records," and that he "reside[s] in a four room apartment with [his wife and children], with a living room serving as a bedroom at night and maintaining old credit card records was not understood by [him] to be a crucial day to day requirement," do not justify his failure to keep adequate financial records. As to the Debtor's first observation, surely it would be an impractical rule if only those debtors who *planned* to seek bankruptcy protection were required to maintain adequate records. Nemes Decl. ¶¶ 12, 13. And as to the Debtor's argument that he did not understand that he would be required to keep "old credit card records," this Court agrees with the court in *In re Sethi:*

> Debtors have a duty to preserve those records that others in like circumstances would ordinarily keep. Hence, the debtor's honest belief that he does not need to keep the records in question, or that his records are sufficient, or his statement that it is not his practice to keep additional records, does not constitute justification for failure to keep or pre-

serve records under § 727(a)(3). "If the debtor's transactions were such that others in like circumstances would ordinarily keep financial records, then [the debtor] must show more than that [he] did not comprehend the need for them and must carry [his] explanation by way of justification to the point where it appears that because of unusual circumstances [he] was under no duty to keep them."

*In re Sethi*, 250 B.R. at 839 (quoting *In re Frommann*, 153 B.R. at 117). While the Debtor states that it was his honest belief that he was not required to keep these records, that does not amount to justification under Section 727(a)(3). *See In re Kowalski*, 316 B.R. at 602.

Moreover, the Debtor did not subpoena the requested documents or appear at his deposition to be examined by the Trustee on these matters. Trustee's Aff. ¶ 16. The Trustee's request for production of the Debtor's credit card and bank account statements, and the response to the Debtor by one of the credit card issuers that statements are available only by subpoena, "would have alerted any reasonable person to the importance of preserving the records and producing them in support of his claim for bankruptcy discharge," especially where, as here, that person has legal counsel to advise him. *In re Jacobowitz*, 309 B.R. at 440. The Debtor had "an obligation to produce any documents requested by [the Trustee] that he had 'the legal right to obtain ... upon demand.'" *The Cadle Co.*, 2002 WL 22075, at *5 (quoting *Cochran Consulting, Inc. v. Uwatec USA, Inc.*, 102 F.3d 1224, 1229–30 (Fed.Cir. 1996)).

 Finally, the Debtor attempts to shift his duty of disclosure to the Trustee by asserting that the "United States Trustee has received several inches of records as a result of their having subpoenaed [his]

credit card records, and why [the Trustee] has not examined these records is inscrutable." Nemes Decl. ¶ 15. But Section 727 and the Bankruptcy Code make clear that the duty of disclosure lies with the debtor. The Debtor, not the Trustee, has an affirmative obligation to provide "complete disclosure" of his financial affairs. *In re Underhill,* 82 F.2d at 259–60. *See In re Sethi,* 250 B.R. at 839. The Trustee and creditors " 'are not required to ferret out' " the required documents. *United States v. Craig (In re Craig),* 252 B.R. 822, 828 (Bankr.S.D.Fla.2000) (quoting *Govaert v. Southern Nat'l Bank of N.C. (In re Caserta),* 182 B.R. 599, 611 (Bankr. S.D.Fla.1995)). *See Union Planters Bank v. Connors,* 283 F.3d 896, 899 (7th Cir. 2002) ("It is the debtor's duty to maintain and provide the court with organized records of its financial dealings."). And in all events, the Debtor supplemented the record of the Summary Judgment Motion with the UST Credit Card Records to which he refers.

In sum, the Court finds that the Trustee has established that the Debtor did not maintain adequate documents and information to permit the Trustee to ascertain the Debtor's financial condition or business transactions, and that the Debtor's failure to do so was not justified under all of the circumstances of the case. As a result, the Court concludes that there is no genuine issue of material fact as to whether the Debtor should be denied a discharge under Section 727(a)(3), and the Trustee's Summary Judgment Motion as to the First Cause of Action will be granted.

C. *Denial of the Debtor's Discharge Under Section 727(a)(5)*

The Trustee's Third Cause of Action seeks the entry of an order under Section 727(a)(5) denying the Debtor a discharge based upon the Debtor's failure to satisfac-

torily explain the lack or deficiency of assets to meet his liabilities. Inasmuch as the Court finds a denial of the Debtor's discharge is warranted under Section 727(a)(3), it is not necessary to decide whether grounds also exist to deny the Debtor's discharge under Section 727(a)(5).

### Conclusion

For the reasons stated herein, the Trustee's Summary Judgment Motion on the First Cause of Action is granted and the Debtor's discharge is denied under Section 727(a)(3) of the Bankruptcy Code. An order in conformity with this Memorandum Decision shall be entered simultaneously herewith.